## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT F. KENNEDY MEMORIAL CENTER FOR HUMAN RIGHTS** ) ) ) ) **Plaintiff,** ) **v.** ) ) **UNITED STATES DEPARTMENT OF THE TREASURY** ) ) ) ) **Defendant.** ) ) | **Civil Action No. 06-1437 (RWR)** **(Electronic Filing)** |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, defendant, the United States Department of the Treasury (Treasury), respectfully moves for summary judgment.  As grounds for this motion, defendant asserts that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. A memorandum of points and authorities, a statement of material facts not in genuine dispute, and a proposed order granting the relief sought are attached hereto.

Respectfully submitted,

/s/

_____

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/

_____

RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/

_____

HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Rm. 4-4808
Washington, D.C.  20530
(202) 305-1334

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROBERT F. KENNEDY MEMORIAL** ) | |
| **CENTER FOR HUMAN RIGHTS** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Civil Action No. 06-1437 (RWR)** |
| ) | **(Electronic Filing)** |
| **UNITED STATES DEPARTMENT OF** ) | |
| **THE TREASURY** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to LCvR 7 (h), the defendant submits this statement of material facts as to which there is no genuine dispute.

1.  Plaintiff submitted its original Freedom Of Information Act (FOIA) request, dated August 25, 2003, to Alana Johnson, Disclosure Officer of Treasury.  That request was mailed to Disclosure Services and contained a fee waiver request and a broad scope of records to search, regarding loans approved by the Inter-American Development Bank (IDB) to Haiti.  The time frame for the requested records was from "July 1, 1998 to the present."  See Exhibit A, FOIA Request Letter of the Robert F. Kennedy Memorial Center for Human Rights (RFK Memorial) dated August 25, 2003.  Declaration of Hugh P. Gilmore (Gilmore Decl.) ¶ 4.

2.  On September 16, 2003, Alana Johnson, Chief of Disclosure Services, acknowledged receipt of the initial FOIA request. See Exhibit B, letter from Alana Johnson to Robert F. Kennedy Memorial Center for Human Rights (RFK Memorial).

3.  On September 23, 2003, the Plaintiff made an additional request for more records pertaining to loans approved by the IDB to Haiti in July 1998.  See Exhibit C, RFK Memorial FOIA Request Letter dated September 23, 2003.

4.  By letter dated February 9, 2004, Alana Johnson, Disclosure Officer of Treasury, acknowledged receipt of the original and amended FOIA request and notified the RFK Memorial that the requests were being forwarded to the appropriate office within Treasury.  Complaint, ¶ 14.

5.  Following further discussions and correspondence between the RFK Memorial and Treasury officials, on September 22, 2005, Sara Paulson, Director of the Office of Financing Operations within Treasury, sent a fax to Ms. Monika Kalra Varma, of the RFK Memorial, requesting that the RFK Memorial provide additional information regarding the original FOIA request for a waiver of fees.  In addition, on September 27, 2005, Stephen Altheim, an international economist and desk officer for the IDB in the Office of Financing Operations, sent Ms. Varma a follow up e-mail that attached and reiterated the request in Ms. Paulson's fax to Ms. Varma. Gilmore Decl. ¶ 7.

6.  On February 3, 2006, Plaintiff made an "amended and restated request" in an effort to reduce the scope of the documents requested.  See Exhibit D, FOIA Request Letter dated February 3, 2006.

7.  By letter dated February 3, 2006 to the Office of Financing Operations, Ms. Varma provided additional justification to Treasury for a fee waiver.  Gilmore Decl. ¶ 8.

8.  By letter dated March 1, 2006, Dirk Joldersma, Acting Director, Office of Financing Operations (International Affairs), informed Ms. Varma that the additional information supplied

2

satisfied the requirements for a fee waiver.  Gilmore Decl. ¶ 9.

      9.  On August 16, 2006, Plaintiff filed the aforementioned FOIA action in the United States District Court for the District of Columbia.  See Complaint.

      10.  Treasury provided a rolling production of documents to counsel for RFK Memorial, starting on September 25, 2006 and ending on January 30, 2007.  The following is a chronology of the dates and the exact or approximate number of pages provided to RFK Memorial's counsel on each date:

| Date: | Number of pages: |
| --- | --- |
| 9/25/06 | 174 |
| 10/16/06 | 26 |
| 12/8/06 | 21 |
| 12/15/06 | 92 |
| 12/22/06 | 145 |
| 12/29/06 | 34 |
| 1/5/07 | 212 |
| 1/10/07 | 669 |
| 1/12/07 | over 1000 |
| 1/17/07 | over 2000 |

The balance of the 4806 pages of documents, consisting of 68 pages, was released to the RFK Memorial on January 30, 2007.  Gilmore Decl. ¶ 27.

      11.  Treasury has located a total of approximately One Thousand Five Hundred and Forty Three (1543) responsive documents and has released them to counsel for the RFK Memorial,

except for all or portions of Sixty (60) memoranda and One Hundred and Forty-Eight (148)

e-mails under Exemption 5, as well as eleven (11) documents under Exemption 4.  Gilmore

Decl. ¶ 28.

Respectfully submitted,

/s/
_____

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
_____

RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
_____

HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT F. KENNEDY MEMORIAL** | ) |
| **CENTER FOR HUMAN RIGHTS** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **UNITED STATES DEPARTMENT OF** | ) |
| **THE TREASURY** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**Civil Action No. 06-1437 (RWR)**
**(Electronic Filing)**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff

the Robert F. Kennedy Memorial Center for Human Rights (RFK Memorial) alleges that the

U.S. Department of the Treasury (Treasury) has improperly withheld documents to which it is

legally entitled.  However, the Treasury has conducted a careful and thorough search for

responsive records, has released the majority of the requested documents in full, and has

withheld some documents, in part, due to FOIA Exemptions (b)(4) and (b) (5).  As the

Declaration of Hugh P. Gilmore (Gilmore Decl.,) evidences, the Treasury's search for

documents is adequate and its redacting of information proper under applicable law.

Mr. Gilmore is the current FOIA Director for Treasury and has served in this capacity

since May 2006.  Gilmore Decl. ¶ 1.  In his capacity as the FOIA Director, he is responsible for

Treasury's efforts with regard to the FOIA.  Gilmore Decl. ¶ 2.  He is also familiar with

Treasury's processing of the Plaintiff's FOIA request in this case, as well as with Treasury's

procedures for processing FOIA requests generally, the FOIA processing manual and regulations

governing Treasury's FOIA program.  Id.    Mr. Gilmore worked with other Treasury officials and employees in collecting, reviewing and releasing documents to RFK Memorial. Gilmore Decl. ¶ 12 - 15.

Russell L. Munk, is the Assistant General Counsel (International Affairs) for Treasury and has served in this capacity since July 1975.  See Declaration of Russell L. Munk (Munk Decl.) ¶ 1.  In this capacity, he is responsible, among other things, for supervising legal work concerning Treasury's participation in the multilateral development banks, including the Inter-American Development Bank (IDB or Bank).  Munk Decl. ¶ 2.  Mr. Munk's declaration attaches the letter of J. James Spinner, the General Counsel of the IDB, which asserts that 11 documents should be withheld due to their confidential nature.

As a part of the process, the Treasury released to RFK Memorial all reasonably segregable factual material contained in the documents.  Gilmore Decl. ¶ 25.  The only instances in which the Treasury did not release factual material were those in which the factual material was inextricably intertwined with the deliberative process material.  Id.  Thus, there is no genuine issue as to any material fact and any further information is exempt from disclosure under applicable FOIA exemptions.  The Treasury, therefore, is entitled to summary judgment in this action as a matter of law.

## ARGUMENT

### A.  Summary Judgment Standard

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(c);

2

Weisberg v. Department of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). The Court exercises de

novo review over FOIA matters, and the burden is on the agency to justify all non-disclosures.

5 U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. For Freedom of the Press,

489 U.S. 749, 755 (1989).  In carrying its burden, agencies may rely on declarations of

government officials which courts normally accord a presumption of expertise in FOIA as long

as the declarations are sufficiently clear and detailed and submitted in good faith.  Oglesby v.

Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see Hayden v. National Security

Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979). Once the Court determines that the declarations

are sufficient, it need not inquire further.  Students Against Genocide v. Department of State,

257 F.3d 828, 833 (D.C. Cir. 2001) (In FOIA cases, an agency "is entitled to summary judgment

if no material facts are in dispute and if it demonstrates 'that each document that falls within the

class requested either has been produced . . . or is wholly exempt from the Act's inspection

requirements'.") (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)); see also, Burnes

v. CIA, No. 05-242 , U.S. Dist LEXIS 20114 at *2-7 (D.D.C. Sept. 14, 2005) (a copy of the

opinion is attached hereto).  A court "may award summary judgment [in a FOIA case] solely on

the basis of information provided by the department or agency affidavits or declarations." Burns

v. CIA, 2005 U.S. Dist LEXIS 20114; see also, Hayden v. National Sec. Agency, 608 F.2d 1381,

1386-87 (D.C. Cir. 1979).

    Regarding the adequacy of the search, to satisfy the requirements for summary judgment,

all the agency need do is produce "an affidavit reciting facts which enable the District Court to

satisfy itself that all appropriate files have been searched." Church of Scientology v. IRS, 792

F.2d 146, 151 (D.C. Cir. 1986).  "[I]n the absence of countervailing evidence or apparent

3

inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the

search conducted by the agency will suffice to demonstrate compliance with the obligations

imposed by FOIA." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).

Here, summary judgment should be entered in favor of Treasury because, as the attached

Gilmore Declaration shows, the Treasury conducted a reasonable and adequate search and any

information that fell within the class of documents plaintiff requested was either produced or is

exempt from disclosure under the FOIA. Students Against Genocide v. Department of State, 257

F.3d at 833. The Gilmore declaration and Vaughn index[1] contain reasonable specificity of detail

regarding the search and the reasons for the withholding of the information that was not

disclosed to the plaintiff. The Treasury's judgment regarding the production or withholding of

information objectively survives the test of reasonableness, good faith, and specificity.

## B. **The Treasury's Search Was Entirely Adequate**

In FOIA cases, "the Court's inquiry regarding the adequacy of the search focuses on the

search itself, not its results." See Burnes v. CIA, No. 05-242, U.S. Dist LEXIS 20114 at *2-7

(D.D.C. Sept. 14, 2005) (attached), citing Weisberg v. United States Dep't of Justice, 240 U.S.

App. D.C. 339, 745 F.2d 121, 126 (D.C. Cir. 1982). To fulfill an agency's obligations under

FOIA,  the agency must demonstrate that it has conducted a "search reasonably calculated to

uncover all relevant documents." Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir.

1994). But the search need only be reasonable; it does not have to be exhaustive. Miller v.

United States Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985). In other words, "[t]he question

_____

[1]  The Vaughn index will be submitted to the Court and plaintiff on a CD-ROM, as the
amount of pages will not allow for filing under the ECF system.

is not 'whether there might exist any other documents, but rather whether the *search* for those documents was adequate.'" Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (emphasis in original). Merely because an agency is unable to find a particular document a requestor believes that it should have, does not render its search inadequate. Wilbur v. CIA, 355 F.3d 675, 678, (D.C. Cir. 2004); Nation Magazine v. United States Customs Serv., 315 U.S. App. D.C. 177, 71 F.3d 885, 892 n. 7 (D.C. Cir. 1987).

Here, as explained by Mr. Gilmore, the Treasury conducted a reasonable, diligent, and adequate search. Upon review of the original FOIA request, Ms. Alana Johnson, Disclosure Officer, determined that responsive records would likely be maintained within the Office of International Affairs, which is the Office within the Treasury that deals with loans to Haiti, other economic issues in the Western Hemisphere, and multilateral development banks. Gilmore Decl.¶ 5. Thus, the request, pursuant to departmental regulations, was referred to the Office of International Affairs for a search for responsive records. Id. The original request and amended requests were logged into the FOIA database and assigned case number 2003-09-010. Gilmore Decl. ¶ 6. An acknowledgment letter of receipt was forwarded to the RFK Memorial. Gilmore Decl. ¶ 5.

The records responsive to this request cover certain loans to Haiti, a foreign country, by the IDB. Id., at ¶ 12. The geographic region of Haiti, as well as the source of the loans from the IDB, eliminated other International Affairs offices such as the Asia and Africa offices from the search. Id. In light of the subject matter of this request, Mr. Gilmore met with two staff members of two offices within the Office of International Affairs - Mr. Altheim, whose office from the Office of Multilateral Development Banks, and Jeffrey Levine, at that time an

5

international economist in the Western Hemisphere Office - who worked on economic issues involving the IDB and Haiti. Id. The meeting was to discuss the scope of the plaintiff's FOIA request. Id. These individuals searched their respective offices' files and provided subject matter files and chronological files by year up through 2004. Id. The files, consisting of approximately 24 inches of documents, were reviewed for responsiveness to the request. Id.

The Office of the Under Secretary for International Affairs was searched for responsive documents. Id., at ¶ 13. A small number of responsive hard-copy documents were found. Id. In addition, responsive documents were pulled from Treasury's off-site archives, located in Suitland, Maryland. Id. A search was also made of the Office of the Executive Secretary, which handles all correspondence involving the Secretary and Deputy Secretary of the Treasury. No responsive documents were found in the Office of the Executive Secretary. Id. A complete search was accomplished by Treasury of all offices that might have possession of documents dealing with loans to Haiti. Id.

The Treasury Office of the Chief Information Officer (CIO) coordinated the downloading of relevant Treasury e-mails. Id., at 15. The CIO search was for all e-mails sent or received by officials involved with Haiti and the IDB loans and which contained both the Boolean search terms "IDB" or "IADB" or "Inter-American Development Bank" and "Hait!". Id. The search was of the two relevant e-mail systems that have been used at Treasury. Id. Those systems are the Groupwise system, which was in used from December 1994 through September 2000 and the Microsoft Outlook system, which is currently in use dating back to September 2000. Id. In order to assist with the search of the e-mail systems, an on-site independent contractor was enlisted to ensure that the search was complete. Id., at ¶ 16.

Additionally, at the recommendation of Treasury CIO staff, another contractor named Guidance Software, was enlisted especially for this project in order to use a forensic software tool called Encase.  Id.  Both contractors searched electronically, using the same Boolean search terms, through the departmental G drive and the personal H drive of twelve other employees, current and/or former Treasury officials, ranging from the Under Secretary for International Affairs through certain staff economists, whose responsibilities might have included review or discussion of the pertinent loans.  Id.  These e-mails were downloaded and printed out, along with attachments and all documents that met the search criteria on the G and H drives.  A total of 121, 368 pages of documents were printed.  Id., at ¶ 17.  The majority of these pages had nothing to do with the information sought in the FOIA request.  Id.  All of the potentially responsive documents including the e-mails were then reviewed for responsiveness and applicability of FOIA exceptions.  Id., at ¶ 18.

The total effort at Treasury to search for, print, copy, and review all responsive documents has required over 1880 labor hours to date.  Id., at 19.  This effort has included at least 140 labor hours from members of the FOIA Office, 902 labor hours by International Affairs professional staff, 28 labor hours from the Printing and Graphics department, 60 labor hours from outside contractors, 590 labor hours by attorneys from the Office of General Counsel, and 144 labor hours of work from support staff at the Offices of General Counsel and International Affairs.  Id.  Accordingly, all known responsive documents at Treasury have been reviewed and either produced to the RFK Memorial or withheld from production pursuant to designated FOIA exceptions.  Id., at ¶ 20.  Treasury maintains no additional responsive materials.  Id.

In sum, the undisputed evidence demonstrates that the extraordinary search conducted by

7

Treasury was reasonable and done in good faith. The files of each office likely to have records responsive to the request were searched. Id., at ¶ 21. Because the Treasury has set out detailed facts establishing that the search was reasonable, summary judgment on this point should be granted.

### C. The Treasury Properly Invoked applicable FOIA Exemptions.

As stated in the Declaration of Hugh Gilmore, the Treasury withheld documents either fully or in part pursuant to FOIA Exemptions (b)(4) and (b)(5). As more fully explained below, Treasury's assertion of these exemptions is justified under the law.

### 1. FOIA Exemption (b)(4)

Exemption 4 of the FOIA permits an agency to withhold "trade secrets and commercial or financial information [that was] obtained from a person [and is] privileged or confidential." 5 U.S.C. § 552(b)(4). As this Court has recognized, the legislative history of FOIA "firmly supports the inference that [Exemption 4] is intended for the benefit of persons who supply information." Public Citizen Health Research Group v. FDA, 185 F.3d 898, 904 (D.C. Cir. 1999) (citing National Parks & Conservation Ass'n. v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974)).

In Critical Mass Energy Project v. NRC, 975 F.2d 871 (D.C. Cir. 1992) (en banc), cert. denied, 507 U.S. 984 (1994), the test which was established for determining whether information is confidential for purposes of Exemption 4 turns on whether its submission to the federal government was voluntary or required. The Court held that Exemption 4 protects "any financial or commercial information provided to the Government on a voluntary basis if it is of a kind that a provider would not customarily release to the public." Id. at 872. In contrast, with respect to

records required to be submitted, Exemption 4 protects as confidential "'any financial or commercial information whose disclosure would be likely either (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" Id. at 878, quoting National Parks, 498 F.2d at 770.

The Critical Mass standard is less stringent than that enunciated in National Parks, and the party seeking to invoke Exemption 4 for voluntarily-submitted records has a lesser burden to meet.[2] Cortez II Service Corp., Inc. v. NASA, 921 F. Supp. 8, 12 (D. D.C. 1996).   This Circuit intentionally chose in Critical Mass to adopt an "objective," easily-applied, "categorical rule," applicable to all voluntary submissions, both because it "recognize[d] a private interest in preserving the confidentiality of information that is provided the Government on a voluntary basis", 975 F. 2d at 879, and because it sought to eliminate the need for complex factual inquiries into the possibility of developing information by other means that had arisen in Exemption 4 cases under the National Parks standard.  (See, e.g., Worthington Compressors v. Costle, 662 F.2d 45 (D.C. Cir. 1981); Greenberg v. FDA, 803 F.2d at 1216.) Id. at 877. "...[W]hen the Government receives information voluntarily, it has a strong interest in ensuring continued access, and therefore both the Government and private interests weigh against overly broad disclosures." Center for Auto Safety v. National Highway Traffic Safety Administration, 244 F.3d 144, 148 (D.C. Cir. 2001).

Exemption 4 operates to protect from disclosure the material at issue here.  In the instant

---

[2]    The agency invoking Exemption 4 for voluntary submissions need only "meet the burden of proving the provider's custom" with respect to the release of the contested information to the public.

matter, the Treasury received the information voluntarily.  If the information was submitted

voluntarily, then the information is "confidential for the purpose of Exemption 4 if it is of a kind

that would customarily not be released to the public by the person from whom it was obtained."

Critical Mass Energy Project,  975 F.2d at 879.  The Court of Appeals recently discussed the

issue of voluntary submissions in Center for Auto Safety v. National Highway Traffic Safety

Admin., 244 F.3d 144 (D.C. Cir. 2001).  In determining that the submission was not mandatory,

the Court held that "actual legal authority, rather than parties' beliefs or intentions, governs

judicial assessments of the character of submissions."  Id., at 149.  The Court rejected subjective

factors in determining whether to consider the request as mandatory or voluntary.  Rather the

Court  "link[ed] enforceability and mandatory submissions" in order to create an objective test.

The Court concluded that if an agency has no objective authority to enforce an information

request, submissions are not mandatory.  Id.  The 11 documents were released voluntarily by the

IDB to Treasury due to Treasury's working relationship with the IDB.  Munk Decl. ¶ 7.  The

United States participates in the IDB through (a) the United States Governor of the IDB, who has

always been the Secretary of the Treasury; as well (b) the United States Executive Director of

the IDB and (c) staff at the U.S. Executive Director's office at the IDB, who work closely with

Treasury's Multinational Development Bank Office and the International Affairs Office as well

as other units at Treasury.  Id., at ¶ 5.

The law does not provide the U.S. government the means to compel the IDB to provide it

with the information contained in the 11 documents that were withheld and Treasury made no

effort to compel the IDB to do so with respect to the information in question.  Id., at ¶ 6.  The 11

withheld documents contain sensitive, confidential and deliberative information that would not

10

be made public.  Id., at ¶ 7.  The United States has committed to participate in the IDB pursuant

to Article XI, section 5, of the IDB Charter, which provides that "the Archives of the Bank shall

be inviolable."  Id., at ¶ 6.

    In addition, these documents contain financial information concerning the Bank's

relationship to a member government.  See J. James Spinner [IDB] letter dated January 24, 2007,

p. 3 - attached to the Declaration of Russell Munk (Munk Decl.).[3]  References to the financial

information varies with each document, however, the documents include detailed financial

figures and projections regarding Bank operations, qualitative analysis of financial information,

and references to the status of the financial relationship between the bank and a member

government.  J. James Spinner [IDB] letter dated January 24, 2007, p. 3.   Some of the

documents also include financial information from other international organizations.  Id.  The

nature of the documents may be grouped into three primary categories.  The first category

represents communications between a member government and the Bank.  The second category

of documents represent communications from Bank management to the Board of Executive

Directors and/or member governments.  The third category represent summaries regarding

meetings of members of the Board of Executive Directors.  In part, these documents also include

views expressed by Bank members.[4]  Id.

---

[3]  J. James Spinner is the General Counsel for the IDB.

[4]  The first category includes documents numbered 1 and 3.  Document 9 is also included
in the first category because it represents, in part, a communication from a member government
to the Bank.  The second category includes documents numbered 4, 8, 10, and 11, and document
9, in part, because it too represents communications from Bank Management to the Board of
Executive Directors and/or member governments.  Document 10 is in the form of a discussion
draft.  The third category includes documents 5, 6 and 7.  Id.

In order for Treasury to participate effectively in the IDB, Treasury officials must be privy to various confidential and sensitive communications among Bank members and staff, as well as internal deliberations of the management and Board of Directors of the IDB.  Munk Decl. ¶ 6.  The information withheld in the eleven documents would not customarily be released to the general public.  Munk Decl. ¶ 7 and J. James Spinner [IDB] letter dated January 24, 2007, p. 3 . Disclosure would have an adverse effect on the Bank's governance, operations and relationships with member governments.  In particular, this disclosure of information consisting of confidential exchanges, created to support decision-making, and records of the internal deliberative process, would have a chilling effect on the exchange of information.  See J. James Spinner [IDB] letter dated January 24, 2007, p. 3.  Such disclosure would further impair both the confidential sharing of ideas and the Bank's ability to exchange such information in the future with Bank members, including the United States.  Id.  Thus, Treasury properly withheld information pursuant to Exemption 4.

### 2. FOIA Exemption (b)(5)

Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), exempts from mandatory disclosure under the FOIA materials consisting of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  In the instant case, Exemption 5 was asserted by the Treasury to protect information that falls within the deliberative process privilege.

The Supreme Court has held that Exemption 5 of the FOIA  incorporates the government's deliberative process privilege, the ultimate purpose of which is to prevent injury to the quality of agency decision-making.  NLRB v. Sears Roebuck & Co., 421 U.S. 132, 150-51

12

(1975). In order for this privilege to be properly invoked, defendant must show first that the document is predecisional, i.e., that it preceded any final agency action on the matter it addresses. To show that a document is predecisional, the agency need not identify a specific final agency decision. Rather, it is sufficient to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980). Second, defendant must show that the document contains deliberative information, i.e., that it makes recommendations or expresses opinions on matters facing the agency. Mapother v. Department of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993); Petroleum Info. Corp. v. Department of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992). Deliberative documents frequently consist of "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. at 150. Thus, the exemption covers recommendations, draft documents, proposals, analyses, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultative process. See Coastal States, 617 F.2d at 866.

All of the information withheld pursuant to Exemption (b)(5) falls within the deliberative process privilege. Treasury is withholding drafts of memos, e-mails (in whole and part) and other records such as talking points which contain recommendations and opinions of either internal Treasury employees or other executive agency personnel. Gilmore Decl. ¶ 24. These recommendations and opinions are all predecisional. Id. Many of these documents are drafts shared between the International Affairs Office at Treasury and the U.S. Department of State. Id. These drafts often precipitated e-mail chains commenting upon and editing the drafts. Id.

Disclosure of these records would reveal the decision making process of the Treasury, impede an open and frank discussion of issues between federal employees and create a chilling effect on the sharing of information and opinion within the Treasury.  Id.

As the Vaughn index indicates, Treasury located a total of approximately 1543 responsive documents.  It has released all of these documents to counsel for RFK Memorial except for all or portions of 60 memoranda and 148 e-mails under Exemption 5.  Id., at ¶ 28.  In addition, Treasury also located and released 200 pages of other documents not listed in the Vaughn index, in September and October 2006 that did not withhold information under any FOIA exemption.  Id.

Treasury's search found that some responsive documents contained information shared outside of executive agencies of the federal government, either with the U.S. Executive Director's Office at the IDB or with the IDB itself.  Id., at ¶ 26.  Such information was not considered to come within the application of Exemption 5 and was disclosed to the extent the information therein was not among the eleven documents withheld at the IDB's request, pursuant to Exemption 4.  Id.  Accordingly, this Court should grant summary judgment on this ground.

### D.  The Treasury Properly Evaluated Documents for Segregabililty

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Billington v. Dep't. of Justice, 233 F.3d 581, 586 (D.C. Cir. 2000); Krikorian v. Dep't. of State, 984 F.2d 461, 466 (D.C. Cir. 1993); Mead Data Cent., Inc. v. United States Dep't. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  The agency must provide a

"detailed justification" to demonstrate that all reasonably segregable information has been

released, Mead Data, 566 F.2d at 261, and show "with reasonable specificity" why a document

cannot be further segregated.  Armstrong v. Executive Office of the President, 97 F.3d 575, 578-

79 (D.C. Cir. 1996).

   Here, Treasury has met its segregability obligation. First, all of the records responsive to

the Plaintiff's FOIA request have been reviewed  and all reasonably segregable non-exempt

information has been released.  Gilmore Decl. ¶¶ 20 & 25.  Second, the agency's release of

documents with appropriate redactions, rather than withholding these documents, demonstrates

that the Treasury reviewed all records carefully and determined what portions could be released

and what portions needed to be withheld.

   In this case, the Treasury expressly considered the segregability issue and concluded that

no additional information could be released to plaintiff.  Gilmore Decl. at  ¶ 25.  Treasury

released to the RFK Memorial all reasonably segregable factual material contained in the

documents and portions thereof that were responsive to its request.  Id.  The only instances in

which Treasury did not release factual material were those in which factual material was

inextricably intertwined with the deliberative process material.  Id.  Information contained in the

released pages, which was not responsive to the request was redacted and marked "NR" on the

respective documents.  Id.  The withholdings are specifically justified in the declaration and

Vaughn  Index submitted in support of this motion. The Treasury properly concluded that no

further information could be released without compromising information exempt under the

claimed exemptions.

## CONCLUSION

The above evidence demonstrates that the Treasury conducted an adequate search and properly withheld information exempt under the FOIA.  Accordingly, the Treasury respectfully requests that this Court grant Defendant's Motion for Summary Judgment, and enter final judgment on its behalf.

Respectfully submitted,

/s/

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/

_____
RUDOLPH  CONTRERAS, D.C. Bar #  434122
Assistant United States Attorney

/s/

_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
 (202) 305-1334

16