UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT F. KENNEDY MEMORIAL CENTER FOR HUMAN RIGHTS,<br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY,<br>    Defendant. | Civil Action No. 1:06CV01437<br>(RWR) |

### DECLARATION OF RUSSELL L. MUNK

I, Russell L. Munk, declare the following to be a true and correct statement of facts:

1) I am the Assistant General Counsel (International Affairs) for the U.S. Department of the Treasury (Treasury). I have served in this capacity at Treasury since July 1975.

2) In this capacity, I have been responsible, among other things, for supervising legal work concerning Treasury's participation in the multilateral development banks, including the Inter-American Development Bank (IDB or Bank).

3) As described in more detail in the attached letter from IDB General Counsel James Spinner, the IDB is a public

-2-

international organization, in which the government of the United States is just one of 46 member governments. The United States accepted membership in the Bank under the authority of the "Inter-American Development Bank Act", Public Law 86-147, 22 U.S.C. Section 283, as amended. (See also, International Organizations Immunities Act (22 U.S.C. Section 288) and Executive Orders 10873 and 11019 (April 8, 1960 and April 27, 1962, respectively).)

4) In section 9 of the Inter-American Development Bank Act, 22 U.S.C. § 283g, the United States commits to give full force and effect to the provisions of certain articles of the Agreement Establishing the IDB, done at Washington, DC, on April 8, 1959, entered into force for the United States on December 30, 1959; 10 U.S.T. 3029; T.I.A.S. No. 4397, as amended (the IDB Charter). These provisions include Article XI, section 5, of the IDB Charter, which states that "The archives of the Bank shall be inviolable."

5) The United States participates in the IDB through (a) the United States Governor of the IDB, appointed by the President with the advice and consent of the Senate, who has always been the Secretary of the Treasury; as well as, on a working level, (b) the United States Executive Director of the IDB, also appointed by the President with the advice and consent of the Senate, and (c) staff

-3-

United States Executive Director of the IDB, also appointed by the President with the advice and consent of the Senate, and (c) staff at the U.S. Executive Director's office at the IDB, who work closely with the Multilateral Development Bank office, my office, and other units at Treasury.

6) In order for Treasury, as well as the United States Governor and Executive Director's office, to participate effectively in the IDB, Treasury officials must be privy to various confidential and sensitive communications among Bank members and staff, as well as internal deliberations of the management and Board of Directors of the IDB. U.S. law does not provide the U.S. government the means to compel the IDB to provide it with such confidential, sensitive, and deliberative information, and Treasury made no effort to compel the IDB to do so with respect to the information in question. The United States has committed to participate in the IDB pursuant to Article XI, section 5, of the IDB Charter, which provides that "The archives of the Bank shall be inviolable."

7) The withheld information in the eleven documents referenced in Mr. Spinner's letter all consists of information

that the IDB has released voluntarily to Treasury for its work with the IDB, but which was determined by the IDB not to be releasable to the general public under the Bank's Disclosure of Information Policy.

8) I declare under penalty of perjury that the matters set forth in this Declaration are within my official purview and are correct and true to the best of my information, knowledge, and belief.

Executed this __3/31__ day of January 2007.

_[signature]_
Russell L. Munk
Assistant General Counsel
    (International Affairs)
U.S. Department of the Treasury

BANCO INTERAMERICANO DE DESARROLLO  INTER-AMERICAN DEVELOPMENT BANK

WASHINGTON, D.C. 20577
CABLES: INTAMBANC

J. JAMES SPINNER
ASESOR JURIDICO

J. JAMES SPINNER
GENERAL COUNSEL

January 24, 2007

Mr. Clay Lowery
Assistant Secretary for International Affairs
U.S. Department of Treasury
United States of America

Dear Mr. Lowery:

    The Inter-American Development Bank (the "Bank") has been informed by the United States Department of the Treasury (the "Treasury") of a request made under the Freedom of Information Act concerning documents in the possession of the Treasury and related to Bank operations in the Republic of Haiti.

    The Bank is a public international organization whose members are the governments of 46 countries, including the United States of America. The Bank was established pursuant to the "Agreement Establishing the Inter-American Development Bank" (done at Washington, DC, on April 8, 1959, entered into force for the United States on December 30, 1959; 10 U.S.T. 3029; T.I.A.S. No. 4397, as amended). The United States accepted membership in the Bank under the authority of the "Inter-American Development Bank Act", Public Law 86-147, 22 U.S.C. Section 283, as amended. (See also, International Organizations Immunities Act (22 U.S.C. Section 288) and Executive Orders 10873 and 11019 (April 8, 1960 and April 27, 1962, respectively).)

    The Agreement Establishing the Inter-American Development Bank provides, in Article XI, that:

> "To enable the Bank to fulfill its purpose and the functions with which it is entrusted, the status, immunities, and privileges set forth in this article shall be accorded to the Bank in the territories of each member." (Section 1)

> "The archives of the Bank shall be inviolable." (Section 5)

    Further, the Bank was designated a public international organization within the meaning of the International Organizations Immunities Act (22 U.S.C. 288, et. seq.) by Executive Orders 10873, dated April 8, 1960, and 11019, dated April 27, 1962, respectively. The International Organizations Immunities Act, provides, in Section 288a(b) that:

> "International organizations, their property and assets, wherever located and by

whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract."

Section 288a(c) further states:

"Property and assets of international organizations, wherever located and by whomsoever held, shall be immune from search, unless such immunity be expressly waived, and from confiscation. The archives of international organizations shall be inviolable."

Without prejudice to the foregoing, the Board of Executive Directors of the Bank has approved a "Disclosure of Information Policy" (the "Policy").[1] The Policy and Bank practice require that the integrity of the Bank's internal deliberative process, as well as documents and information prepared for internal use, remain confidential to ensure that there is an open and free exchange of ideas within the Bank's governing bodies (i.e., the Board of Governors and the Board of Executive Directors); between the Bank and its member governments; between such bodies or members and Bank officials as part of the Bank's own decision-making process; and between the Bank and other national or international organizations. The Policy expressly characterizes types of information not to be publicly disclosed:

"Information which is identified ... by the Bank as confidential or sensitive, or as information that may adversely affect relations between member countries and the Bank ... if disclosed ... shall not be made available to the public." (Section D.2)

"There is a need to preserve the integrity of the deliberative process and to ensure that there is an open and free exchange of ideas within the institutions' governing bodies, i.e., the Boards of Governors and Executive Directors; between the Bank and its member countries and agencies; between the Bank and other national, international or bilateral organizations or agencies or private sector entities; and within the Bank's own decision-making process. Accordingly, there are restrictions to the availability of documents and information prepared within the context of these principles." (Section D.3)

"Documents and information prepared by Executive Directors, their Offices, and the management and staff (including consultants and advisors) of the Bank for internal use are confidential in nature and will not be made available to the public." (Section D.4)

### The Eleven Documents Listed in Exhibit A.

The Bank respectfully requests that the U.S. Treasury not disclose the eleven documents listed in the attached Exhibit A. In the case of each document, disclosure would not be permitted under the above-cited authorities. (We note that the immunities described above have not been waived by the Bank for these documents nor has disclosure of these documents otherwise been authorized by the Bank.)

---

[1] The documents that are the subject of this letter pre-date the current form of the Policy. Prior versions of the Policy, and prior to the approval of such a Policy, the Bank's disclosure of information was more restricted than at present. Notwithstanding, for the purposes of this letter, I refer to the current form of the Policy.

All of these eleven documents contain sensitive and confidential financial information concerning the Bank's relationship to a member government. The form of such financial information varies with each document, however, the documents include detailed financial figures and projections regarding Bank operations, qualitative analysis of financial information, and references to the status of the financial relationship between the Bank and a member government. Some documents also include financial information from other international organizations.

Although the nature of the documents also varies. However, each document is covered by the restrictions under the Bank's Policy and concern sensitive communications between the Bank and its members. The nature of the documents may be grouped into three primary categories. Characterizing the first group, documents numbered 1 and 3 expressly represent communications between a member government and the Bank. (Document 2 appears to be informal notes from a member government.) Document 9 also represents, in part, a communication from a member government to the Bank.

Characterizing the second group, documents numbered 4, 8, 10 and 11, and document 9, in part, represent communications from Bank Management to the Board of Executive Directors and/or member governments. Document 10 is in the form of a discussion draft. The third group, documents 5, 6 and 7, represent summaries regarding meetings of members of the Board of Executive Directors (in two cases, in the form of notes prepared by an individual member). In part, these documents also include views expressed by Bank members.

In light of the sensitive nature of this information, if the documents were disclosed contrary to the authorities specified above, such disclosure would have an adverse effect on the Bank's governance, operations and relationships with member governments. In particular, this disclosure of information consisting of confidential exchanges and created to support decision-making, and records of the internal deliberative process, would have a chilling effect on the exchange of information. Such disclosure would further impair both the confidential sharing of ideas and the Bank's ability to exchange such information in the future with Bank members, including the United States.

In the case of information concerning individual members and other international organizations, disclosure contrary to the Policy would also represent a violation of the trust among the Bank, its member governments and other international institutions. Last, disclosure contrary to established legal authority would create uncertainty for the Bank, its member governments and other international organizations and would inhibit exchanges essential to sound institutional governance.

Therefore, the Bank respectfully requests that the Treasury not disclose the eleven documents included in the attached Exhibit A. Thank you for your consideration of this request.

Sincerely,

J. James Spinner

Exhibit A: List of Non-Disclosed Documents.

**EXHIBIT A**

**List of Non-Disclosed Documents**

1. Memorandum from Bruce M. Juba, Senior Counselor, to K. Burke Dillon, Executive Vice President, dated December 8, 2000.

2. Document entitled "Haiti & the IDB Background," dated December 18, 2000.

3. Fax from Bruce Juba to Ivy Kosmides, dated September 20, 2001 (pages 01/12 through 06/12).

4. Document No. CS-3442 Corr., dated May 24, 2002.

5. Email from Jorge Luis Arrizurieta to Steven Backes and Stephen Altheim, dated May 29, 2002.

6. Document No. GN-2212, dated June 18, 2002.

7. Email from Jorge Luis Arrizurieta to William Schuerch, Stephen Altheim, John Jenkins, Sara Paulson, Nancy Lee and Meg Donovan, dated June 20, 2002.

8. Document No. CS-3442-1 Rev., dated June 28, 2002.

9. Document No. GN-2212-1, dated September 3, 2002.

10. Facsimile dated December 19, 2002.

11. Document No. CS-3442-2, dated January 30, 2003.